IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| | § | Criminal Action No. |
| v. | § | |
| | § | 3:10-CR-013-K |
| | § | |
| MARK THOMAS ANTHONY | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Suppress Evidence (Doc. No. 17). The Court has considered the record in the case, the briefs of the Defendant and the government, the evidence and testimony from the hearing held on August 19, 2010, and the applicable law, and finds that the Motion to Suppress should be and is hereby **DENIED**.

I.  **Factual and Procedural Background**

Defendant Mark Thomas Anthony was found by Dallas Police Officers Ricardo Campbell and Timothy Drummond in the parking lot of the Suburban Extended Stay Hotel ("Suburban Hotel") at 10326 Finnell Street in Dallas at 9:30 am on December 14, 2009. Anthony was lying on his back with his legs sticking out the driver's side of a truck, working underneath the dashboard. Officers Campbell and Drummond were

on patrol in the Northwest Highway/Walton Walker Target Area Action Grid where the Suburban Hotel was located because a high number of property crimes had recently been reported.

The officers, suspicious that Anthony may be committing a theft, approached Anthony and asked him for identification, insurance, and proof of ownership of the truck. Anthony produced his proof of insurance and stated he owned the truck, but told the officers he didn't have his wallet with him. When asked for his name and date of birth, Anthony gave fake ones to the officers. The officers' search on the fake name Anthony supplied did not return any matches. The officers then ran the license plate number on the truck, which returned Anthony's correct name along with the fact that he owned the vehicle. A search of Anthony's name turned up an outstanding arrest warrant in Dallas County. The officers arrested Anthony, but he was not immediately Mirandized.

The officers requested the keys to Anthony's truck and Anthony responded that the keys were in the hotel room he had been sharing with his girlfriend. Other officers had responded by this point and left to find Anthony's keys in the hotel room. These officers located the room and the door was answered by Ashley Engel, Anthony's girlfriend. The hotel room where Anthony and Ms. Engel were staying was registered in Engel's name. The officers requested permission from Ms. Engel to search the hotel

room for Anthony's keys, to which she gave both written and verbal consent.

After consent to search the hotel room was granted, officers found a blue duffle bag. The duffle bag was located on a shelf which was immediately visible as the officers entered, and bore no tags or labels indicating ownership. Inside the duffle bag the officers found numerous documents with other persons' names on them, including social security cards, birth certificates, and business checks. All of these identifying documents belonged to persons other than Anthony or Engel.

Anthony was then Mirandized for the first time and interviewed about these documents by Detectives Forney and Flynn at the scene. Afterwards, Anthony was taken to a police substation where he was Mirandized again. At the substation, Anthony gave a written statement in which he admitted stealing all of the documents found in the blue duffle bag from mail boxes. Also, Anthony admitted to washing, rewriting, and cashing checks and money orders. Anthony spoke with Postal Inspector Halsell the following day, December 15, 2009, after Halsell had Mirandized Anthony a third time. Anthony admitted stealing the documents to Halsell and identified another individual who had also been stealing documents out of the mail.

Anthony was indicted on January 20, 2010 for Theft or Receipt of Stolen Mail, in violation of 18 U.S.C. § 1708. Anthony filed this Motion to Suppress on June 7, 2010. A hearing was held on the motion on August 19, 2010.

II.  **Legal Standard**

The government's burden of proof on a motion to suppress is a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, n.14 (1974)(citing *Lego v. Twomey*, 404 U.S. 477, 488–89 (1972)).

III.  **Analysis**

A.  **Initial Encounter**

Anthony argues that he was unlawfully detained by Officers Campbell and Brown when they first pulled up to Anthony's truck and, as result, all of the evidence obtained afterwards is inadmissible.

1.  **Did a seizure occur?**

The Fourth Amendment protects us from unreasonable searches and seizures by the government.  *Virginia v. Moore*, 553 U.S. 164, 168 (2008).  A seizure does not occur within the meaning of the Fourth Amendment unless a reasonable person would not feel free to disregard the police.  *California v. Hodari*, 499 U.S. 621, 628 (1991).  This reasonable person standard is judged by a totality of the circumstances.  *Florida v. Bostwick*, 501 U.S. 429, 436 (1991).  "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions [and] ask for identification. . . provided they do not induce cooperation by coercive means."  *United*

*States v. Drayton*, 536 U.S. 194, 201 (2002). Examples include approaching individuals on the street or in other public places and asking questions. *United States v. Carreon-Palacio*, 267 F.3d 381, 388 (5th Cir. 2001).

Anthony was working on his truck in the middle of a parking lot. Officers Campbell and Drummond approached him and asked who he was and if he owned the vehicle on which he was working. Officer Campbell did not unholster his weapon or suggest there would be consequences if Anthony did not answer. Anthony was not handcuffed or otherwise prevented from leaving. It wasn't until after the officers discovered that Anthony had given a false name and date of birth to hide the fact that he had an arrest warrant that Anthony was seized. The record evidences that the officers simply asked Anthony questions without attempting to induce cooperation through coercion.

    2.    *Terry* **stop**

Even if Officer Campbell's actions constituted a seizure, he and Officer Drummond had a reasonable suspicion that Anthony was committing a crime. Officers are permitted to detain a person if they have a reasonable suspicion, supported by articulable facts, that a crime is being or has been committed. *Terry v. Ohio*, 391 U.S. 1, 21 (1968). Under *Terry*, a court must decide (1) whether the officers' actions were justified at the inception and (2) whether the officers' subsequent actions were

reasonably related in scope to the circumstances of the stop. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). A detention must be temporary and last no longer than necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges. *United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999).

Officers Campbell and Drummond were patrolling an area that had experienced an increased number of property crimes. Anthony was seen lying on the floorboard of a truck in a hotel parking lot, doing something under the dashboard. Officers also saw a second man standing nearby, not assisting Anthony with the work. It appeared to both officers that Anthony may have been stealing the stereo out of the truck and that the second man was acting as a look-out. When considered together, these facts are sufficient to create a reasonable suspicion that a crime may be occurring.

The actions taken by Officers Campbell and Drummond upon approaching Anthony were reasonably related to assuring that no crime was taking place. They asked Anthony for his name, proof of insurance, and if he owned the truck. Officer Drummond ran the truck's license plate to find the registered owner. It was not until a warrant for Anthony's arrest turned up that the officers arrested Anthony.

Anthony argues that merely "looking suspicious" and being in a high crime area does not rise to the level of reasonable suspicion required of a *Terry* stop. *Brown v. Texas*,

443 U.S. 47 (1979). In our case, though, Anthony did not simply *look* suspicious. There is certainly a difference between Anthony's actions and the officers approaching an individual because he was wearing baggy clothes or sunglasses. Anthony was in the act of working under the dashboard of a truck with what appeared to be someone acting in concert with him as a look-out standing nearby when the officers approached. This Court finds that rises above the level of simply "looking suspicious."

Officers Campbell and Drummond did not violate the Fourth Amendment during their initial encounter with Anthony; therefore, the evidence subsequently gathered does not require exclusion.

B. **Consent to Search the Hotel Room**

Anthony argues that the contents of the blue duffle bag found in the hotel room are inadmissible because the consent Engel gave to the officers did not extend to his duffle bag.

1. **Actual authority to consent**

Consent to search is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The burden is on the government to demonstrate that the consent was: (1) freely and voluntarily given; (2) that the individual granting consent had the authority to do so; and (3) that the search was limited to the consent given. *See United States v. Solis*, 299 F.3d 420, 436 (5th Cir.

2002). If the individual granting consent is not the owner of the property searched and/or seized, the individual must have actual or apparent authority to do so. *United States v. Gonzalez*, 121 F.3d 928, 938 (5th Cir. 1997). Actual authority exists when the third party granting consent possessed joint access or control over the property to be searched. *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996). For apparent authority, the officers need only have had a reasonable belief that the individual granting consent had authority to do so. *Id*.

Engel answered the door to the hotel room. The officers did not have their weapons drawn. She told the officers that she was staying in the hotel room. The room was rented in her name. Engel gave verbal consent to search the room and signed a written consent that advised her she had the right to deny a warrantless search. Engel did not attempt to limit the consent to search the hotel room to certain areas or items. Even if Engel appeared visibly nervous during this process, that does not render her consent involuntary. *United States v. Galbreth*, 846 F.2d 983, 988 (5th Cir. 1988). The Court finds the record establishes that her consent was freely and voluntarily given, that the officers' search was limited to that consent, and that Engel had joint access or control over the property to be searched.

### 2. Apparent authority to consent

Even if this does not establish actual authority through joint access and control of the hotel room, it created a reasonable belief in the minds of the officers that Engel had authority to grant consent.

Anthony asserts that *Jaras* and *United States v. Taylor*, 600 F.3d 678 (6th Cir. 2010), control in this case. *Jaras* involved the search of the luggage of a passenger in the trunk of a car after the owner of the car consented to a search. *Jaras*, 86 F.3d at 385. In that case, though, the Fifth Circuit found it significant that the third party granting consent specifically identified which bags were his and which belonged to the passenger. *Id*. at 390. This was important because it became a factor affecting whether or not the officer reasonably believed that the owner's consent extended to the luggage of the passenger.

In *Taylor*, officers obtained consent to search an apartment from the apartment's tenant, a woman. *Taylor*, 600 F.3d at 678. The defendant in *Taylor* had been storing possessions in the apartment for about a month. *Id*. at 679–80. A hand gun was found during the search in a closed Air Jordan shoe box, partially covered with men's clothing in the corner of a closet in the spare bedroom. *Id*. at 680. There, the Tenth Circuit found that the presence of men's clothing in a spare bedroom and other items unrelated to the female tenant should have caused officers to doubt that the tenant had authority

to permit a search of the spare bedroom. *Id*. at 680–81.

Here, Engel did not instruct the officers to limit their search to certain areas or items in the hotel room, nor did she identify any objects that did not belong to her. There were no identifying marks or tags on the blue duffle bag. The officers had no reason to believe that the bag belonged to Anthony before opening it. *See United States v. Freeman*, 482 F.3d 829 (5th Cir. 2007)(upholding the search of a backpack belonging to a third party in a sleeping car aboard a train after consent was granted by another occupant on the sleeping car).

Because a reasonable officer would have believed that the consent given by Engel extended to the blue duffle bag, there was no Fourth Amendment violation and the documents seized from the bag are admissible.

### C. Anthony's Statements

Anthony argues that the statements he made after he was arrested, including those made to Detectives Forney and Flynn and Inspector Halsell, are inadmissible because they are all fruit of the allegedly illegal detention and searches. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963)(evidence obtained as a direct result of unlawful invasion is barred from trial). This Court has already found that both Anthony's initial detention and the searches were legal. Therefore, his statements are not fruit of any illegal searches or seizures.

Anthony also argues that he was not Mirandized until his interview with Detectives Forney and Flynn and not immediately after he was arrested, thus rendering his statements inadmissible. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Anthony does not specifically identify which statements are inadmissible, so, in an abundance of caution, this Court will evaluate all of them.

*Miranda* protects individuals from the harms associated with custodial interrogation. *Duckworth v. Evans*, 492 U.S. 195, 202 (1989). "Any statement given freely and voluntarily without any compelling influences is... admissible in evidence." *Miranda*, 384 U.S. at 478. Pre-arrest statements, *United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993), and routine post-arrest statements concerning personal information, *Presley v. City of Benbrook*, 4 F.3d 405, 408 (5th Cir. 1993), do not violate Fifth Amendment rights.

The only statements by Anthony mentioned in his brief are the answers to questions posed by Officers Campbell and Drummond prior to his arrest, statements claiming responsibility for illegal drugs found in his girlfriend's purse, and the verbal and written statements given to Detectives Forney and Flynn and Inspector Halsell. All of Anthony's statements prior to his arrest when Officers Campbell and Drummond discovered the warrant in Dallas County are admissible, because they occurred prior to custodial interrogation. *Howard*, 991 F.2d at 200. The record establishes that Anthony

volunteered the information about the illegal drugs in his girlfriend's purse when he overheard the officers discussing it. This makes that statement admissible because it was freely and voluntarily given, not the result of interrogation. *Miranda*, 384 U.S. at 478. Each statement to the detectives and Inspector Halsell was preceded by a valid *Miranda* warning and waiver, which makes those statements admissible. *Missouri v. Sebiert*, 542 U.S. 600, 608–09 (2004). The Court finds that Anthony's Fifth Amendment rights were not violated.

**D.     Illegal drugs found in Anthony's truck**

Anthony asks this Court to suppress the illegal drugs found in his possession because he claims his Fourth Amendment rights were violated. The indictment filed in this case concerns only the stolen documents found in Anthony's blue duffle bag. The illegal drugs will not be relevant to prove any element of the crime of stealing mail. References to the illegal drugs, then, may be decided on evidentiary grounds. Therefore, it is not necessary to consider the constitutional issues of Fourth Amendment protections and the exclusionary rule. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985)("judicial restraint requir[es] us to avoid unnecessary resolution of constitutional issues"). The Court abstains from ruling on these constitutional claims.

IV.     Conclusion

Accordingly, the Court finds that Anthony's constitutional rights were not violated by his initial encounter with the officers, his girlfriend had actual or apparent authority to consent to a search of the hotel room, and the manner in which Anthony's statements to the officers were collected did not violate the Fifth Amendment. Anthony's Motion to Suppress is **DENIED**.

**SO ORDERED.**

Signed October 21st, 2010.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE